FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Sep 23, 2019

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WASHINGTON

CRISTELLA R. ,[1]
               Plaintiff,

    vs.

ANDREW M. SAUL,
COMMISSIONER OF SOCIAL
SECURITY,[2]
           Defendant.

No. 1:18-cv-03205-MKD

ORDER GRANTING PLAINTIFF'S
MOTION FOR SUMMARY
JUDGMENT AND DENYING
DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT

ECF Nos. 17, 18

Before the Court are the parties' cross-motions for summary judgment. ECF
Nos. 17, 18. The parties consented to proceed before a magistrate judge. ECF No.

---

[1] To protect the privacy of plaintiffs in social security cases, the undersigned
identifies them by only their first names and the initial of their last names.

[2] Andrew M. Saul is now the Commissioner of the Social Security Administration.
Accordingly, the Court substitutes Andrew M. Saul as the Defendant and directs
the Clerk to update the docket sheet. *See* Fed. R. Civ. P. 25(d).

ORDER - 1

7. The Court, having reviewed the administrative record and the parties' briefing, is fully informed. For the reasons discussed below, the Court grants Plaintiff's motion, ECF No. 17, and denies Defendant's motion, ECF No. 18.

## JURISDICTION

The Court has jurisdiction over this case pursuant to 42 U.S.C. §§ 405(g); 1383(c)(3).

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152,

ORDER - 2

1156 (9th Cir. 2001). If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id.* An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(b), 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment is as severe or more

severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. §§ 404.1520(d), 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity." Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age,

education, and past work experience.  20 C.F.R. §§ 404.1520(a)(4)(v),

416.920(a)(4)(v).  If the claimant is capable of adjusting to other work, the

Commissioner must find that the claimant is not disabled.  20 C.F.R. §§

404.1520(g)(1), 416.920(g)(1).  If the claimant is not capable of adjusting to other

work, analysis concludes with a finding that the claimant is disabled and is

therefore entitled to benefits.  20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

The claimant bears the burden of proof at steps one through four above.

*Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  If the analysis proceeds to

step five, the burden shifts to the Commissioner to establish that 1) the claimant is

capable of performing other work; and 2) such work "exists in significant numbers

in the national economy."  20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2); *Beltran v.*

*Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

On June 9, 2011, Plaintiff applied both for Title II disability insurance

benefits and Title XVI supplemental security income benefits alleging a disability

onset date of November 1, 2007.  Tr. 581-94.  The applications were denied

initially, Tr. 388-91, and on reconsideration, Tr. 394-98.  Plaintiff appeared before

an administrative law judge (ALJ) on August 9, 2013.  Tr. 161-217.  On September

6, 2013, the ALJ denied Plaintiff's claim.  Tr. 356-79.  On February 12, 2015, the

Appeals Council remanded Plaintiff's case for further administrative proceedings. Tr. 380-85.

On August 24, 2016, Plaintiff appeared before a different ALJ for a second hearing. Tr. 218-57. The ALJ deferred any decision on Plaintiff's claim until after interrogatories were provided to a medical expert. Tr. 251-56. On March 22, 2017, Plaintiff appeared before the same ALJ for a third hearing. Tr. 258-98. On September 21, 2017, the ALJ denied Plaintiff's claim. Tr. 12-45.

At step one of the sequential evaluation process, the ALJ found Plaintiff had not engaged in substantial gainful activity since November 1, 2007. Tr. 18. At step two, the ALJ found that Plaintiff had the following severe impairments: neurocognitive disorder, affective/depressive disorder, opiate dependence, and pain disorder. Tr. 18.

At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment. Tr. 22. The ALJ then concluded that Plaintiff had the RFC to perform light work with the following limitations:

> [Plaintiff] cannot climb ladders, rope, or scaffolding. She can occasionally stoop, kneel, crouch, crawl, and climb ramps and stairs. She can frequently reach, handle, and finger bilaterally. She could avoid unprotected heights or moving mechanical parts. She is limited to performing unskilled work with a specific vocational preparation (SVP) of two or less. She needs a work environment with few workplace changes. She can have frequent interaction with supervisors, coworkers, and the public. Due to her combination of

physical and psychological symptoms, she will be off-task up to ten percent of her work shifts.

Tr. 25.

At step four, the ALJ found Plaintiff was unable to perform any past relevant work. Tr. 34. At step five, the ALJ found that, considering Plaintiff's age, education, work experience, RFC, and testimony from the vocational expert, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, such as small products assembler, electrical accessories assembler, and office helper. Tr. 35-36. Therefore, the ALJ concluded Plaintiff was not under a disability, as defined in the Social Security Act, from the alleged onset date of November 1, 2007, though the date of the decision. Tr. 36.

On August 24, 2018, the Appeals Council denied review of the ALJ's decision, Tr. 1-6, making the ALJ's decision the Commissioner's final decision for purposes of judicial review. *See* 42 U.S.C. § 1383(c)(3).

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying her disability insurance benefits under Title II and supplemental security income benefits under Title XVI of the Social Security Act. Plaintiff raises the following issues for review:

1.   Whether the ALJ conducted a proper step-two analysis;

2.   Whether the ALJ properly evaluated Plaintiff's symptom claims;

3.   Whether the ALJ properly evaluated the medical opinion evidence; and

4.   Whether the ALJ conducted a proper step-five analysis.

ECF No. 17 at 2.

## DISCUSSION

### A.   Step Two

Plaintiff contends the ALJ erred by failing to identify her gastrointestinal (GI) condition as a medically determinable impairment and by failing to identify her spinal impairment as a severe impairment at step two.  ECF No. 17 at 3-10.

At step two of the sequential process, the ALJ must determine whether the claimant suffers from a "severe" impairment, i.e., one that significantly limits her physical or mental ability to do basic work activities.  20 C.F.R. §§ 404.1520(c), 416.920(c).  To show a severe impairment, the claimant must first prove the existence of a physical or mental impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings; the claimant's own statement of symptoms alone will not suffice.  20 C.F.R. §§ 404.1521, 416.921. An impairment is non-severe if "medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work…."  Social Security Ruling

(SSR) 85-28 at *3. Therefore, an impairment is non-severe if it does not significantly limit a claimant's physical or mental ability to do basic work activities, such as walking, standing, sitting, lifting, reaching, carrying, handling, responding appropriately to supervision and usual work situations, and dealing with changes in a routine work setting. 20 C.F.R. § 416.922 (2017); SSR 85-28 at *3.

Step two is "a de minimus screening device [used] to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996). "Thus, applying our normal standard of review to the requirements of step two, [the Court] must determine whether the ALJ had substantial evidence to find that the medical evidence clearly established that [Plaintiff] did not have a medically severe impairment or combination of impairments." *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005).

### 1. Gastrointestinal Condition

The ALJ found that Plaintiff did not have a GI condition that constituted a medically determinable impairment, and that even if she did, the ALJ "account[ed] for her pain symptoms by limiting her to light exertional labor with non-exertional limitations." Tr. 20. The ALJ erred. First, as argued by Plaintiff, the ALJ ignored the evidence of record that detailed Plaintiff's recurring abdominal adhesions. ECF No. 17 at 4. On May 22, 2007, Plaintiff was admitted to Lourdes Medical

Center with complaints of abdominal pain, and five days later she had surgery to resection her colon and to break up adhesions in her pelvic area and along her small bowel. Tr. 778, 780. On November 8, 2007, Plaintiff had surgery for a colostomy closure and more adhesions were found and lysed. Tr. 1564-65. On January 2, 2008, a CT scan of Plaintiff's abdomen and pelvis showed a few loops of distended small bowel in her pelvis, "suggesting adhesions." Tr. 1591. In April 2009, treating surgeon Robert Salisbury, M.D., noted that Plaintiff had pelvic pain from "probable adhesions," and opined that this caused her to be severely limited in her ability to stand, walk, lift, handle, and carry. Tr. 740. Dr. Salisbury performed Plaintiff's hysterectomy on July 23, 2009, and multiple adhesions were lysed during surgery. Tr. 1577. Her postoperative diagnosis was "[l]eft hydrosalpinx with pelvic adhesive disease" and "probable uterine fibroids." Tr. 1577. On September 20, 2010, treating surgeon Ernesto Dizon, Jr., M.D. opined that Plaintiff's abdominal pain was "likely from adhesions versus incisional hernias." Tr. 1703. Dr. Dizon performed surgery on Plaintiff two weeks later, on October 5, 2010, during which he laparoscopically lysed multiple adhesions. Tr. 1709. Dr. Dizon reported that he explored Plaintiff's abdominal cavity and noted that it "took a while to lyse all the adhesions as these were significant adhesions." Tr. 1709. On July 3, 2012, imaging of Plaintiff's upper GI and small bowel revealed a "loop of mildly distended small bowel in the left upper quadrant and

mid abdomen which correlates with the palpable tenderness in [Plaintiff's] abdomen" and "also correlates with the loop of abnormal bowel seen on recent CT." Tr. 1715. Later that month, on July 20, 2012, Plaintiff underwent an exploratory laparotomy and lysis of more adhesions by Dr. Dizon. Tr. 1681. Dr. Dizon's postoperative diagnosis was chronic abdominal pain with intraabdominal adhesions. Tr. 1681. Dr. Dizon again reported that this procedure revealed "significant adhesions." Tr. 1681. He also noted, "in the lower abdomen near the bladder, the omentum was quite adhered." Tr. 1681. Dr. Dizon performed an inspection of Plaintiff's small bowel and reported a "[s]ignificant amount of adhesions of the small bowel to the pelvis, as well [as] to other small bowel were lysed using sharp dissection." Tr. 1681. Dr. Dizon observed "significant adhesion, causing significant twisting and matting of small bowel loops." Tr. 1681. He placed an antiadhesion barrier in Plaintiff's bladder area on top of the omentum. Tr. 1681. However, just over five months later, on January 8, 2013, Plaintiff underwent surgery with Dr. Dizon to remove her gallbladder, and more adhesions were lysed. Tr. 1529. Dr. Dizon's postoperative diagnosis again included "intraabdominal adhesions." Tr. 1529. Dr. Dizon reported, "of note, significant adhesions of the omentum to the midline were noted and also the left lower quadrant. [Plaintiff] has chronic right upper quadrant pain and left lower quadrant pain." Tr. 1529. On August 5, 2013, treating ARNP Jason Roberts diagnosed

Plaintiff with peritoneal adhesions and noted "[p]eritoneal adhesions can cause significant pain with many types of movement." Tr. 980. On December 8, 2014, ARNP Roberts noted that abdominal adhesions caused marked limitations in Plaintiff's ability to sit, stand, walk, lift, carry, handle, push, pull, reach, stoop, and crouch. Tr. 1190. During the August 2013 hearing, Plaintiff testified that the main reason she was unable to work was due to pain in the lower left part of her abdomen. Tr. 189. She testified that Dr. Dizon told her the pain was caused by "adhesive lesions." Tr. 189. During the administrative hearings in August 2016 and March 2017, Plaintiff testified that she continued to have abdominal pain. Tr. 236, 272-74.

Second, the ALJ misrepresented the record related to Plaintiff's GI condition. The ALJ found that, contrary to her testimony, Plaintiff's reviews of symptoms had been negative for incontinence. Tr. 20 (citing Tr. 952, 1327). While the records cited by the ALJ show that Plaintiff reported no urinary incontinence, her symptom complaints involved bowel incontinence. *See* Tr. 952 ("negative for…urinary incontinence"); *see also* Tr. 1327 "negative…urinary incontinence"). Moreover, despite the ALJ's assertion that Plaintiff "has no documented reports of incontinence to treatment providers," on June 24, 2013, at a consultation regarding her abdominal pain, Plaintiff reported to Amy Zeigler, PAC, that she "occasionally leaks stool." Tr. 988. On January 13, 2015, in a session

ORDER - 13

with Madora Althauser at Tri-Cities Community Health, Plaintiff reported that she was partially or totally incontinent.  Tr. 1734.  Further, on May 21, 2015, Plaintiff reported to Joelle Heikkila at Tri-Cities Community Health that she "continues to experience frequent diarrhea which has been going on for approximately 7 years, and said that there are times when she is unable to 'feel it coming out' affecting her ability to plan or function in everyday events."  Tr. 1772.  The ALJ also stated that Plaintiff's "work history otherwise indicates that she was able to continue working despite the effects of any gastrointestinal (GI) impairment."  Tr. 19.  However, at the August 2013 hearing, Plaintiff testified that she understood the reason she was let go from her job in November 2007 was because she was "missing too many days of work because of the pain."  Tr. 191.  At the March 2017 hearing, Plaintiff testified that she was let go from her job in November 2007 because she was missing a lot of work.  Tr. 280.  Based on this record, the ALJ's conclusion that Plaintiff's GI condition was not a medically determinable impairment because she had "generally normal clinical studies and examination findings" was not based on substantial evidence.  Tr. 20.

The ALJ erred when he failed to include a gastrointestinal condition as a medically determinable impairment at step two.  This error is not harmless.  *See Molina*, 674 F.3d at 1115 (an error is harmless only when it is "inconsequential to the [ALJ's] ultimate nondisability determination").  The ALJ stated that he

accounted for Plaintiff's pain symptoms from her GI condition by limiting her to light work with non-exertional limitations. Tr. 20. "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds…a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 CFR §§ 404.1567(b), 416.967(b). The ALJ did not place any limitations on Plaintiff's ability to walk or stand, nor did he include any limitations to account for attendance issues. Tr. 25. As discussed *supra*, the record reflects that Plaintiff's medical providers considered her abdominal adhesions to be sufficiently serious as to require multiple procedures to lyse significant adhesions. She was diagnosed by treating surgeon Dr. Dizon with chronic abdominal pain with intraabdominal adhesions, Tr. 1681, and by treating surgeon Dr. Salisbury with pelvic adhesive disease, Tr. 1577. Dr. Dizon opined that Plaintiff's abdominal pain was "likely from adhesions versus incisional hernias," Tr. 1703, and Dr. Salisbury opined that Plaintiff's pelvic pain was from "probable adhesions," Tr. 740. Dr. Salisbury opined that Plaintiff's adhesions caused her to be severely limited in her ability to stand, walk, lift, handle, and carry, Tr. 740, and treating ARNP Roberts opined that her abdominal adhesions caused marked limitations in Plaintiff's ability to sit, stand, walk, lift, carry, handle, push, pull, reach, stoop, and crouch, Tr. 1190. Although the ALJ gave

only some weight to the opinion of Dr. Salisbury, the ALJ's discussion of Dr. Salisbury's opinion was silent as to his diagnosis of and limitations assigned to Plaintiff's adhesions. Tr. 28. The ALJ gave minimal weight to ARNP Roberts' opinion that Plaintiff would miss four or more days of work per month due to pain from her gastrointestinal adhesions, noting that ARNP Roberts "appears to have no basis for his assessment besides [Plaintiff's] own reporting of longstanding pain symptoms." Tr. 31-32. The ALJ's discussion of ARNP Roberts' opinion ignores the diagnoses of intraabdominal adhesions and pelvic adhesive disease by Plaintiff's treating surgeons. Tr. 1577, 1681.

The ALJ has committed harmful error in his finding at step two. Because this error may impact multiple steps of the sequential evaluation process, on remand, the ALJ must reassess the medical evidence at step two, reconsider Plaintiff's symptom claims and the medical opinion evidence, reassess the RFC and, if necessary, pose a new hypothetical to a vocational expert to ensure that it properly includes all of Plaintiff's exertional and nonexertional limitations that are supported by substantial evidence. *See Osenbrock v. Apfel,* 240 F.3d 1157, 1165 (9th Cir. 2001) ("[a]n ALJ is free to accept or reject restrictions in a hypothetical question that are not supported by substantial evidence.").

## 2. Spinal Impairment

The ALJ found that Plaintiff's spinal impairment was non-severe and that, even if she did have a severe spinal impairment, "this impairment is accommodated by limiting her to light exertional labor with non-exertional limitations." Tr. 22. The ALJ erred. The ALJ concluded that the longitudinal evidence, treatment records showing "generally adequate" management, inconsistencies in the evidence, and Plaintiff's apparent malingering demonstrated that Plaintiff did not have a severe spinal impairment. Tr. 22. However, an MRI of Plaintiff's lumbar spine in December 2015 showed a broad-based degenerative disc bulge flattening the ventral thecal sac and producing borderline mild canal stenosis at L4-5. Tr. 1037. On July 11, 2016, Plaintiff had a facet joint steroid injection in her lumbar spine. Tr. 1143. An MRI of her lumbar spine on August 17, 2016 showed disc bulges at L3-4 and L4-5. Tr. 1156. On September 26, 2016, Plaintiff underwent spinal surgery. Tr. 1276. On December 30, 2016, after her spinal surgery, an MRI of Plaintiff's lumbar spine showed moderate stenosis at L4-5, and the L5 nerve roots were in close proximity to the disc with equivocal impingement. Tr. 1278-79. The record reflects that Plaintiff's medical providers considered Plaintiff's spinal impairment to be sufficiently serious as to require spinal surgery and steroid injections, notwithstanding the pain medication that Plaintiff was on for her lumbar condition. The record contains observations of

pain and limitations caused by Plaintiff's spinal impairment, Tr. 958-59, 1190, and Plaintiff's reported limitations in sitting, standing, walking, bending, lifting, pulling, and pushing, Tr. 276, 278, 283, 285-86, 1192.  As with Plaintiff's GI condition, the ALJ determined that, even if Plaintiff did have a severe spinal impairment, this impairment was accommodated by limiting her to light exertional labor with non-exertional limitations.  Tr. 22.  The ALJ failed to explain how the RFC accommodated Plaintiff's spinal impairment and related symptoms.

Given that this matter is remanded for reconsideration of Plaintiff's GI condition as discussed *supra*, on remand, the ALJ is directed to reconsider the evidence related to Plaintiff's spinal impairment, reassess whether Plaintiff's spinal impairment is a severe impairment, and determine whether it necessitates additional exertional limitations in the RFC.

Typically, errors at step two are harmless if the step was resolved in a claimant's favor because the sequential analysis continues.  *See Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006); *Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005).  Here, the error at step two was the result of the ALJ's selective review of the medical evidence, as he disregarded and devalued significant evidence related to abdominal adhesions and a spinal impairment that necessitated steroid injections and surgery.  The ALJ must consider all of the relevant evidence in the record and may not point to only those portions of the

records that bolster his findings.  *See, e.g., Holohan v. Massanari*, 246 F.3d 1195,

1207-08 (9th Cir. 2001) (holding that an ALJ cannot selectively rely on some

entries in a claimant's records while ignoring others).  Although the ALJ's analysis

continued beyond step two in this case, Plaintiff has shown through evidence in the

record that her GI condition and spinal impairment create limitations that have not

been accounted for in the RFC.  *See Shinseki*, 556 U.S. at 409-10 (the party

challenging the ALJ's decision generally bears the burden of showing harm).

Therefore, the ALJ's error at step two in this case is not harmless.  Further, the

ALJ's selective review of the record permeated the ALJ's entire decision and

impacted the analysis at the subsequent steps.

### B.     Other Challenges

Plaintiff raises several other challenges to the ALJ's evaluation of Plaintiff's

symptom claims and the medical opinion evidence, as well as the ALJ's step five

analysis.  ECF No. 17 at 10, 20, 22.  However, the ALJ's findings at other steps in

the sequential evaluation in this case inherently depend on the ALJ's findings

regarding the medically determinable and severe impairments at step two.  Because

this case is remanded for the ALJ to reconsider Plaintiff's GI condition and spinal

impairment at step two, the Court declines to address Plaintiff's other challenges

here.  However, the Court briefly addresses the following.  First, if the ALJ is to

find that Plaintiff was malingering, the ALJ must reconsider his representation of

the record that Plaintiff's allegations of disabling physical and psychological issues were "severely undermined by *repeated* evidence of malingering in regards to these complaints" when in fact there was only one medical source in the more than 1,800-page record to opine that Plaintiff was malingering. Tr. 27 (emphasis added). Second, if the ALJ is to find that Plaintiff's daily activities were inconsistent with her alleged level of impairment, the ALJ must identify how Plaintiff's activities contradicted her testimony regarding her alleged symptoms. *See Garrison v. Colvin*, 759 F.3d 995, 1016 (9th Cir. 2014) (citing *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) ("Recognizing that 'disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations,' we have held that '[o]nly if [his] level of activity were inconsistent with [a claimant's] claimed limitations would these activities have any bearing on [his] credibility.'")). The ALJ must consider Plaintiff's testimony that her level of activity was dependent upon whether she was having a good day or a bad day with her pain level. *See, e.g.,* Tr. 194 ("I've got more bad days than good days"); Tr. 194 ("[T]oday was actually one of my good days and I was able to get up earlier this morning and drive myself here. On the bad days, I can't even get out of bed to do anything"); Tr. 211 (Plaintiff testified that she wakes up around 6:30 a.m. on a "good day"); Tr. 234 ("On my good days, I used to be able to at least go to the

store"); Tr. 279 (Plaintiff testified that on a "bad day," she does not see anyone and she does not know what is going on").

The ALJ is instructed to conduct a new sequential analysis on remand, including reassessing Plaintiff's symptom claims and the medical opinion evidence, and conducting a new analysis at step five in light of the new evaluation of Plaintiff's medically determinable and severe impairments at step two.

## C.  Remand

Plaintiff urges this Court to credit-as-true Plaintiff's symptom claims and several of the medical source opinions.  ECF No. 17 at 13, 17-18, 22.  "The decision whether to remand a case for additional evidence, or simply to award benefits is within the discretion of the court."  *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987) (citing *Stone v. Heckler*, 761 F.2d 530, 533 (9th Cir. 1985)). When the Court reverses an ALJ's decision for error, the Court "ordinarily must remand to the agency for further proceedings."  *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017); *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) ("[T]he proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation"); *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014).  However, in a number of Social Security cases, the Ninth Circuit has "stated or implied that it would be an abuse of discretion for a district court not to remand for an award of benefits" when three

ORDER - 21

conditions are met.  *Garrison*, 759 F.3d at 1020 (citations omitted).  Under the

credit-as-true rule, where 1) the record has been fully developed and further

administrative proceedings would serve no useful purpose; 2) the ALJ has failed to

provide legally sufficient reasons for rejecting evidence, whether claimant

testimony or medical opinion; and 3) if the improperly discredited evidence were

credited as true, the ALJ would be required to find the claimant disabled on

remand, the Court will remand for an award of benefits.  *Revels v. Berryhill*, 874

F.3d 648, 668 (9th Cir. 2017).  Even where the three prongs have been satisfied,

the Court will not remand for immediate payment of benefits if "the record as a

whole creates serious doubt that a claimant is, in fact, disabled."  *Garrison*, 759

F.3d at 1021.

> Here, further proceedings are necessary.  As discussed *supra*, substantial

evidence does not support the ALJ's findings at step two.  The ALJ's findings at

step two permeated the entire decision, as Plaintiff's symptom claims related to her

GI condition and spinal impairment were discredited, many of the medical source

opinions were discounted in part because the ALJ found they were based on

Plaintiff's unreliable self-reports, and the ALJ's findings at step five were based on

a hypothetical that was formulated under a flawed step two analysis.  On remand,

the ALJ is to conduct a new sequential analysis, including reconsidering Plaintiff's

symptom testimony and the medical opinion evidence, as well as considering the

testimony of a vocational expert if there is a new RFC in light of the new analysis at step two relating to Plaintiff's GI condition and spinal impairment.

## CONCLUSION

Having reviewed the record and the ALJ's findings, the Court concludes the ALJ's decision is not supported by substantial evidence and free of harmful legal error. Accordingly, **IT IS HEREBY ORDERED**:

1. The District Court Executive is directed to substitute Andrew M. Saul as the Defendant and update the docket sheet.

2. Plaintiff's Motion for Summary Judgment, **ECF No. 17**, is **GRANTED**.

3. Defendant's Motion for Summary Judgment, **ECF No. 18**, is **DENIED**.

4. The Clerk's Office shall enter **JUDGMENT** in favor of Plaintiff REVERSING and REMANDING the matter to the Commissioner of Social Security for further proceedings consistent with this recommendation pursuant to sentence four of 42 U.S.C. § 405(g).

The District Court Executive is directed to file this Order, provide copies to counsel, and **CLOSE THE FILE.**

DATED September 23, 2019.

*s/Mary K. Dimke*
MARY K. DIMKE
UNITED STATES MAGISTRATE JUDGE

ORDER - 23